1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SUSAN LINTZ, Trustee for The Robert Lintz Trust, | ) ) ) | Case No.: 5:13-CV-01757-EJD |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | ) ) | |
| BANK OF AMERICA, N.A.; ONE REVERSE MORTGAGE, LLC and DOES 1 through 50, inclusive, | ) ) ) ) | **[Re: Docket Nos. 15, 20, 34, 36]** |
| Defendants. | ) ) ) ) | |

Presently before the court are two motions relating to the First Amended Complaint

("FAC") filed by Plaintiff Susan Lintz, the trustee of the Robert Lintz Trust ("Plaintiff"): (1) a

Motion to Dismiss or For a More Definite Statement filed by Defendant Bank of America, N.A.

("Bank of America") and (2) a Motion to Dismiss filed by Defendant One Reverse Mortgage, LLC

("ORM").  See Docket Nos. 15, 20, 34, 36.

Having carefully reviewed these motions, the Court grants Defendants' Motions to Dismiss.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

I.   **BACKGROUND**

a.   **Factual Background**

Plaintiff is the successor trustee of The Robert Lintz Trust.  FAC ¶ 1.  Decedent Robert H. Lintz ("Robert") was an elder who suffered from a variety of medical issues which caused him to be homebound and dependent upon his wife, Lynne Lintz ("Lynne").  Id. ¶ 2.  Robert died at the age of 82 on October 2, 2009 in Monterey County, and Robert's death certificate lists Alzheimer's disease as a contributing factor in his death.  Id.

Robert was a highly successful real estate developer and had accumulated a large amount of separate property.  Req. for Judicial Notice in Supp. of Bank of America's Motion to Dismiss, Docket No. 35 ("RJN1"), Ex. B.  Amongst Robert's holdings was a property located at 3294 Stevenson Drive, Pebble Beach, CA (the "Stevenson Property").  FAC ¶ 5.  Prior to late 2007, the Stevenson Property was Robert's separate property and title was held in a limited liability company.  Id. ¶¶ 18, 25.

In late 2007, Robert and Lynne contacted mortgage broker ORM and applied for a reverse mortgage of $6,500,000 on the Stevenson Property.  See id.; RJN1, Ex. B at 6.  Scott O'Hara, ORM's employee, assisted Robert and Lynne with their reverse mortgage application.  FAC ¶ 17. ORM allegedly did not offer any proprietary reverse mortgages other than that from Bank of America, entitled "The Independence Plan."  See id. ¶ 31.  Plaintiff alleges that "The Independence Plan" is ORM's most expensive and highest fee-producing mortgage and that ORM represented to Robert that it was the only mortgage available to him.  See id. ¶ 57.

Mr. O'Hara advised Robert and Lynne that the property had to be in joint tenancy for the mortgage to be approved.  See RJN1, Ex. B at 6.  The Stevenson Property was then transferred on December 4, 2007 into the names of both Robert and Lynne as Joint Tenants.  Id.  Thereafter, and before the loan had closed, on December 8, 2007, the Stevenson Property was placed into the names of Robert and Lynne as community property with right of survivorship.  See id.  Mr. O'Hara testified that he did not instruct anyone that this should be done.  See id.  Myron Etienne and Dale Grindrod, who served as Robert's estate lawyers between approximately 2002 and spring 2008, were surprised later to find out that this deed had been prepared (as well as by the fact that Robert

2

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    and Lynne applied for a reverse mortgage.  See RJN1, Ex. B at 3, 6.  When Mr. Grindrod

2    discovered the transfer, he sent a letter pointing out to Robert that the consequences of such a

3    transfer would be to eviscerate the estate plan which had been created at Robert's direction and

4    would leave the Stevenson Property entirely to Lynne on Robert's death.  Id. at 6.

5         Bank of America approved and funded the loan in February 2008.  FAC ¶ 33.  On

6    Februrary 25, 2008, Bank of America recorded "The Independence Plan" Reverse Mortgage

7    Adjustable Rate Deed of Trust which allowed a maximum principal amount of $6,500,000 to be

8    drawn against the Stevenson Property.  Id. ¶ 34.  On February 26, 2008, the day the reverse

9    mortgage loan closed, Lynne had $1,250,286 drawn against the Stevenson Property and wired to a

10   Wells Fargo account in her and Robert's name.  Id. ¶ 35.  On June 21, 2011, Lynne was found

11   liable for financial elder abuse of Robert by the Monterey Superior Court.  RJN1, Ex. B at 10.

12       **b. Procedural History**

13       Plaintiff Susan Lintz filed her original complaint in Monterey County Superior Court on

14   March 13, 2013 against Bank of America and ORM.  Docket No. 34, Bank of America's Motion to

15   Dismiss at 4.  Defendants removed the action to this Court based on diversity jurisdiction and filed

16   parallel motions to dismiss.  Id.  Plaintiff filed the FAC on May 28, 2013.

17       Plaintiff's FAC charges both Defendants with constructive fraud, violations of the Unfair

18   Competition Law, and breach of fiduciary duty.  See FAC.  Against ORM alone, Plaintiff alleges

19   financial abuse of an elder, fraud, negligence, intentional misrepresentation, and negligent

20   misrepresentation.  Id.

21       On June 14, 2013, Bank of America filed a Motion to Dismiss Plaintiff's FAC and for a

22   More Definite Statement.  On the same day, ORM filed a Motion to Dismiss Plaintiff's FAC.

23   Defendants' motions argue that all eight of Plaintiff's claims should be dismissed because they are

24   barred by the relevant statutes of limitations.  Defendants further move to dismiss all eight of

25   Plaintiff's claims for failure to state a claim.  Defendants have filed separate Requests for Judicial

26   Notice in support of their Motions to Dismiss.

27

28

*United States District Court*
*For the Northern District of California*

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim in the complaint with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Shroyer v. New Cingular Wireless Servs., Inc., 606 F.3d 658, 664 (9th Cir. 2010) (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. REQUESTS FOR JUDICIAL NOTICE

A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b).

ORM and Bank of America make unopposed Requests for Judicial Notice. Docket Nos. 35, 37. Bank of America's Request for Judicial Notice ("RJN1") is GRANTED and ORM's Request for Judicial Notice ("RJN2") is GRANTED.

## IV. DISCUSSION

### a. Statute of limitations

Defendants argue that Plaintiff's claims are time-barred and that accrual of the applicable statutes of limitation on Plaintiff's various claims began on Februrary 26, 2008, the date the reverse

**United States District Court**
For the Northern District of California

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    mortgage on the Stevenson Property closed.  Plaintiff contends that equity should toll the

2    limitations period and that a later accrual date is justified based on the delayed discovery rule.

3                          **i.    Equitable tolling**

4            Plaintiff disputes whether accrual of the statutes of limitation began on February 26, 2008.

5    However, Plaintiff argues that, even if accrual began on that date, the Court should exercise its

6    equitable power to toll the statutes of limitation because "[t]his suit is brought by Trustee Susan

7    Lintz on behalf of the Robert Lintz Trust.  The trust did not exist until its creation on June 21,

8    2011.  The Trustee seeks to make the trust whole for the losses it incurred due to ORM's conduct.

9    Because the trust did not exist before June 21, 2011, Trustee could not have brought this suit on its

10   behalf before that date at the very earliest."  Docket No. 42, Pl's Opp. to ORM's Motion to Dismiss

11   at 6.

12          Plaintiff has not cited, nor has the Court independently uncovered, any statute or judicial

13   decision tolling the statute of limitations under these or similar circumstances.  Instead, Plaintiff

14   cites a general proposition from <u>Grell v. Laci Le Beau Corp.</u>, 73 Cal. App. 4th 1300, 1305 (1999),

15   that tolling exceptions not prescribed by statute may be created by the courts to effect the

16   legislative purpose behind statutory tolling exceptions, which is to benefit those who are under

17   circumstances that make it impossible or impracticable for them to bring a timely suit.

18          Plaintiff contends that it was impossible for her to have brought suit prior to her

19   appointment as trustee, but this argument misses the point.  A cause of action that survives the

20   death of the person entitled to commence an action or proceeding passes to the decedent's

21   successor in interest.  Cal. Civ. Proc. Code § 377.30.  Except as otherwise provided by statute, a

22   cause of action for or against a person is not lost by reason of the person's death, but survives

23   subject to the applicable limitations period.  Cal. Civ. Proc. Code § 377.20(a).  Thus, the correct

24   inquiry is not whether it was impossible for Plaintiff to bring suit, but whether it was impossible for

25   Robert or his successor in interest to bring suit.  The claims belonged to Robert, and there is no

26   allegation that Robert was unable to bring suit prior to his death.

27          Furthermore, prior to Robert's death Plaintiff, as Robert's proposed conservator, filed suit

28   against Lynne and succeeded in holding her liable for financial elder abuse.  In that action, filed

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

June 25, 2009, Plaintiff based some of her allegations on suspected wrongdoing in connection with the same reverse mortgage now the subject of this current lawsuit. See RJN1, Ex. A.  Thus, as early as June 25, 2009, Plaintiff was pursuing claims on Robert's behalf.  Plaintiff has not explained why it was impossible for her, on behalf of Robert, to have pursued claims against ORM and Bank of America at that time in spite of her ability to pursue claims against Lynne.

The alleged facts therefore establish that equitable tolling is inappropriate as to Plaintiff's claims against ORM and Bank of America.

### ii.    Delayed discovery rule

Although equitable tolling is inappropriate, Plaintiff argues that California's delayed discovery rule applies to all of her claims.  Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements."  Norgart v. Upjohn Co., 21 Cal. 4th 383, 389 (1999).  An exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.  Id. at 397.

A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.  McKelvey v. Boeing N. Am., Inc., 74 Cal. App. 4th 151, 160 (1999).

Plaintiff advances two arguments in support of her position.  Her first argument is similar to her equitable tolling argument: because the trust and her position as trustee did not exist until June 21, 2011, "Trustee's knowledge could not begin before her position existed."  This argument fails because it does not state the time and manner of discovery, it merely states the inability to have made earlier discovery.

Plaintiff's second argument is that accrual should be delayed until March 15, 2011, the date that Mr. O'Hara testified about the circumstances surrounding the reverse mortgage.  Plaintiff argues that prior to that date, she had assumed that ORM faithfully fulfilled its fiduciary duties to Robert.  In the context of the discovery rule, a fiduciary relationship between a plaintiff and

United States District Court
For the Northern District of California

6

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

defendant "relaxe[s] plaintiff's duty to inquire into the circumstances surrounding defendant's alleged fraud." <u>Lee v. Escrow Consultants, Inc.</u>, 210 Cal. App. 3d 915, 921 (1989).

The Court has difficulty determining whether or not the delayed discovery rule will operate to delay accrual of Plaintiff's claims. Plaintiff's arguments assume that the delayed discovery rule applies even when the discoverer (Plaintiff) is not the same person as the harmed party (Robert). Both ORM and Bank of America have argued against delayed accrual on the basis that Plaintiff failed to exercise reasonable diligence. However, as stated above, the claims belonged to Robert, based on acts that occurred while Robert was still alive. It is unclear whether the delayed discovery rule applies under such circumstances.

The question of whether a plaintiff exercised reasonable diligence will generally be a factual inquiry not suitable for determination at the motion to dismiss stage. In our case, this would be a rather awkward inquiry for the factfinder to make. Whether it was reasonable for Plaintiff to delay in discovering ORM's alleged wrongdoing is quite different from whether it was reasonable for Robert to delay, because Robert was the individual who interacted directly with ORM, not Plaintiff. Plaintiff anchors her claims on Mr. O'Hara's interactions with Robert, which Plaintiff learned of through Mr. O'Hara's testimony. Although it may have been reasonable for Plaintiff to delay in discovering the wrong because she was not privy to those interactions, Robert was obviously present. And it may have been reasonable for Robert to delay in discovering the alleged wrongs because of the fiduciary relationship between Robert and Mr. O'Hara, but it would be odd to say that *Robert* exercised reasonable diligence and then fix the time and manner of discovery to the date when *Plaintiff* received Mr. O'Hara's testimony, which occurred after Robert had already passed.

The Court hopes that the above discussion illustrates to the parties the awkwardness of applying the delayed discovery rule to this case. Nevertheless, because Plaintiff's claims will be dismissed for inadequate pleading as stated below, the Court defers further discussion of the delayed discovery rule until a later time. Should this issue appear again before the Court, the Court requests that the parties provide appropriate briefing to address whether or not Plaintiff can invoke the delayed discovery rule despite the concerns outlined above.

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### b. Double recovery

Bank of America contends that Plaintiff is seeking an improper double recovery for the same alleged injury.  In her FAC, Plaintiff alleges damages stemming from the reverse mortgage. Bank of America contends that Plaintiff has already fully recovered for her damages from the reverse mortgage because the Monterey Superior Court charged the amount of the reverse mortgage against Lynne in its June 21, 2011 ruling.

An injured person is entitled to only one satisfaction of judgment for a single harm, and full payment of a judgment by one tortfeasor discharges all others who may be liable for the same injury.  This rule, designed to prevent double recovery and never-ending litigation by dissatisfied claimants, applies whether a single judgment has been obtained against joint or concurrent tortfeasors, whether separate judgments of equivalent or disparate amounts have been obtained against tortfeasors, or whether no other judgment has been obtained against other tortfeasors. Watson v. McEwen, 225 Cal. App. 2d 771, 774-775 (1964); Winzler & Kelly v. Superior Court, 48 Cal. App. 3d 385, 392-393 (1975).

Neither the pleadings nor the judicially noticed facts clearly indicate that Plaintiff has already obtained satisfaction of her judgment against Lynne.  The Court agrees with Plaintiff that, to determine whether Plaintiff has already obtained satisfaction of judgment would require the Court to speculate beyond the pleadings and the judicially noticed facts.  Furthermore, Plaintiff claims damages beyond the amount of the reverse mortgage.  Plaintiff also seeks disgorgement of gains and exemplary and punitive damages.

Accordingly, Bank of America's argument is rejected, and the Court shall not dismiss on the basis that Plaintiff seeks a double recovery.

### c. Fraud, intentional misrepresentation, and negligent misrepresentation

The Court notes that Plaintiff has pleaded separate causes of action for fraud and intentional misrepresentation.  Intentional misrepresentation is a claim for fraud.  See Anderson v. Deloitte & Touche, 56 Cal. App. 4th 1468, 1474 (1997).  Therefore, the Court shall consider the two causes of action as one.

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   The elements of intentional misrepresentation are: (1) misrepresentation (false

2   representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to

3   defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.  Id.

4   Specifically, to prevail on a claim for relief under intentional misrepresentation, Plaintiff must

5   prove: (1) defendant represented to the plaintiff that an important fact was true; (2) that

6   representation was false; (3) the defendant knew that the representation was false when the

7   defendant made it, or the defendant made the representation recklessly and without regard for its

8   truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff

9   reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance

10  on the defendant's representation was a substantial factor in causing that harm to the plaintiff.

11  Manderville v. PCG & S Group, Inc., 146 Cal. App. 4th 1486, 1498 (2007).  The plaintiff must

12  prove each element by a preponderance of evidence.  See Stoner v. Williams, 46 Cal. App. 4th 986,

13  988 (1996).

14  Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the

15  circumstances constituting fraud."  In the Ninth Circuit, "claims for fraud and negligent

16  misrepresentation must meet Rule 9(b)'s particularity requirements."  Neilson v. Union Bank of

17  California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).  A court may dismiss a claim

18  grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements.

19  Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  To satisfy Rule 9(b),

20  Plaintiffs must allege "the who, what, where, and how of the misconduct charged."  Vess at 1106

21  (9th Cir. 2003) (internal quotations omitted).  In addition, Plaintiffs must plead reasonable reliance

22  on alleged misstatements with particularity by alleging facts "of sufficient specificity," allowing a

23  court to infer that "misrepresentations caused injury to plaintiffs by inducing them to pay" for

24  products or services.  In re Actimmune Marketing Litig., 2009 WL 3740648, at *11 (N.D. Cal.

25  Nov. 6, 2009); see City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App.

26  4th 445, 481 (1998) ("The well-established common law elements of fraud" require "justifiable

27  reliance on the misrepresentation.").  Furthermore, plaintiffs must not simply allege falsity, but

28

9

1  must explain "why the statement or omission complained of was false or misleading."  In re

2  GlenFed, Inc. Sec. Litig., 42 F. 3d 1541, 1548 (9th Cir. 1994).

3          Plaintiff alleges that Mr. O'Hara, ORM's employee, represented to Robert that the

4  proprietary "The Independence Plan" mortgage, ORM's most expensive and highest fee-producing

5  mortage, was the only mortgage available to him and that the mortgage would not be approved if

6  Robert did not transmute his separate property.  FAC ¶¶ 57, 67, 102, 109.  Although the falsity of

7  these representations is alleged, Plaintiff provides no explanation for *why* the representations were

8  false or misleading other than to contend that "ORM knew at the time that . . . Robert had other

9  options, including entering into other reverse mortgages or entering into no reverse mortage at all"

10  and that "ORM offered, and knew that it offered, other types of reverse mortagages."  FAC ¶¶ 103,

11  110.  The mere fact that ORM offered other mortgages does not mean those mortgages were

12  actually available to Robert or that Robert would meet the requirements to qualify for those

13  mortgages.  It is not alleged that Robert asked ORM to present all available options and was told

14  that he would qualify only for "The Independence Plan" when he actually would have qualified for

15  other mortgages.

16          Furthermore, Plaintiff has not actually alleged that it was false that Robert would need to

17  transmute his separate property to qualify for "The Independence Plan."  At best, these are

18  "conclusory allegations of fraud . . . punctuated by a handful of neutral facts."  Semegen v.

19  Weidner, 780 F. 2d 727, 730 (9th Cir. 1985).

20          Plaintiff further fails to properly plead justifiable reliance.  Plaintiff alleges that Robert

21  obtained the reverse mortgage and transmuted his separate property in reliance on ORM's

22  representations and that his reliance was reasonable but provides nothing further.  FAC ¶¶ 60, 69.

23  This statement falls short of Rule 9(b)'s pleading standard because it does not specify which exact

24  misrepresentation Robert relied on, whether that misrepresentation induced Robert's decision, or

25  whether Robert would have acted differently had there been no misrepresentation.  See Noll v.

26  eBay, Inc., 282 F.R.D. 462, 468 (N.D. Cal. 2012).  This omission is particularly conspicuous in

27  light of the fact that Robert and Lynne received counseling from an independent third party before

28  they could proceed with their loan application.  See Pl's Opp. to ORM's Motion to Dismiss at 12.

United States District Court
For the Northern District of California

10

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    Accordingly, the Court DISMISSES with leave to amend Plaintiff's second (fraud), seventh

2 (intentional misrepresentation) and eighth (negligent misrepresentation) causes of action.

3         **d.  Breach of fiduciary duty**

4         To establish a cause of action for breach of fiduciary duty, a plaintiff must demonstrate the

5 existence of a fiduciary relationship, breach of that duty and damages.  Benasra v. Mitchell

6 Silberberg & Knupp LLP 123 Cal. App. 4th 1179, 1183 (2004); Pierce v. Lyman, 1 Cal.App.4th

7 1093, 1101 (1991).  Plaintiff cites Cal. Civ. Code § 2923.1, which imposes a fiduciary relationship

8 between mortgage brokers and borrowers.

9         Section 2923.1 has not been subject to significant interpretation by California or Ninth

10 Circuit courts.  However, cases prior to the enactment of § 2923.1 had already established that

11 mortgage brokers are the fiduciaries of their borrowers.  In Wyatt v. Union Mortgage Co., 24 Cal.

12 3d 773 (1979), the court explained that the general principles of agency combine with statutory

13 duties created by California Real Estate Law "to impose upon mortgage loan brokers an obligation

14 to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the

15 utmost good faith toward their principals."  Id.  This includes a duty to disclose all material facts

16 which might affect the principal's decision.  Id.

17         Although some cases have interpreted Wyatt as obligating mortgage brokers to orally

18 disclose the terms of the loan agreements and counsel borrowers on the loans' material terms,

19 including the rate of interest, possible penalties and balloon payment (See Zimmer v. Nawabi, 566

20 F. Supp. 2d 1025, 1031-33 (E.D. Cal. 2008)), other cases have declined to extend Wyatt in such a

21 manner, concluding that such a broker has duties that "arise from a prohibition against making

22 affirmative misrepresentations rather than from a duty to explain the ins and outs of each loan

23 product."  Stetler v. Greenpoint Mortgage Funding, Inc., 2008 WL 192405, at *7 (E.D. Cal. Jan.

24 23, 2008).  Another court found no breach of duty where Plaintiffs did not present any evidence

25 that the broker had made any affirmative misrepresentations regarding the terms of their loans.  See

26 Nero v. Evans, 2011 WL 2680483, at *14 (S.D. Cal. July 8, 2011).

27

28

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

It is unclear from the text of § 2923.1 whether the Legislature intended to extend the fiduciary duties of mortgage brokers beyond the duties imposed by <u>Wyatt</u> and its accompanying cases. Section 2923.1(a), in its entirety, provides that:

> A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law. This fiduciary duty includes a requirement that the mortgage broker place the economic interest of the borrower ahead of his or her own economic interest. A mortgage broker who provides mortgage brokerage services to the borrower owes this fiduciary duty to the borrower regardless of whether the mortgage broker is acting as an agent for any other party in connection with the residential mortgage loan transaction.

The second sentence, the economic interest requirement, can reasonably be read as either imposing an enhanced duty above existing law or as merely codifying existing law. When the language of a statute is susceptible to more than one reasonable construction a court may turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning. <u>See</u> <u>Granberry v. Islay Investments</u>, 9 Cal. 4th 738, 744 (1995).

An analysis of the legislative history demonstrates that the Legislature merely intended to codify the fiduciary duties originally set forth in <u>Wyatt</u>. Section 2923.1 was added by Assembly Bill 260 during the 2009-2010 session. An analysis of the bill provided that "the intent of this provision is to codify fiduciary duty and not to imply a fiduciary relationship that may not otherwise exist." S. Judiciary Comm., A.B. 260 - Bill Analysis, 2009-2010 Leg., Reg. Sess., at 10 (Cal. July 13, 2009). Thus, the Court applies <u>Wyatt</u> and its accompanying cases to determine whether Plaintiff has stated a claim for breach of fiduciary duty.

Plaintiff has not alleged that ORM failed to disclose all material facts concerning "The Independence Plan." Rather, Plaintiff argues that ORM breached its duty because ORM failed to present information regarding *alternative* reverse mortgage options. <u>See</u> FAC ¶ 85. Moreover, Plaintiff argues that a breach of duty occurred because ORM "did not advise against unduly and

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1    unnecessarily encumbering an asset" and "[directed] Robert to transfer his separate property into

2    joint tenancy with Lynne, his financial elder abuser."  FAC ¶¶ 85, 86.

3           On these alleged facts, Plaintiff does not state a claim for breach of fiduciary duty.

4    Mortgage brokers' fiduciary duties require that they fully and truthfully explain the terms of the

5    loan product, with a potential additional requirement  to counsel on the loans' material terms such

6    as the rate of interest and possible penalties.  The law does not appear to contemplate a duty to

7    inform borrowers of other mortgage options or advise against any mortgage at all.

8           Accordingly, the Court DISMISSES with leave to amend Plaintiff's fifth cause of action.

9           **e.  Constructive fraud**

10          Plaintiff's third cause of action is for constructive fraud.  Constructive fraud involves "any

11   breach of duty which, without an actually fraudulent intent, gains an advantage to the person in

12   fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of

13   any one claiming under him" or "any such act or omission as the law specially declares to be

14   fraudulent, without respect to actual fraud."  Cal. Civ. Code § 1573.  "Constructive fraud 'arises on

15   a breach of duty by one in a confidential or fiduciary relationship to another which induces

16   justifiable reliance by the latter to his prejudice.'"  Tyler v. Children's Home Society, 29 Cal. App.

17   4th 511, 548 (1994) (citing Odorizzi v. Bloomfield School Dist., 246 Cal. App. 2d 123 (1966)); see

18   also In re Harmon, 250 F.3d 1240, 1248 n. 10 (9th Cir. 2001).

19          As discussed in the foregoing section, Plaintiff has not stated a claim for breach of a

20   fiduciary duty, and Plaintiff does not allege a confidential relationship.  Accordingly, the Court

21   DISMISSES with leave to amend Plaintiff's third cause of action.

22          **f.  Negligence**

23          Plaintiff's sixth cause of action for negligence is based upon the same alleged breach of

24   fiduciary duty as her breach of fiduciary duty and constructive fraud claims.  See FAC ¶¶ 96, 97. As

25   discussed above, Plaintiff has failed to state a claim for a breach of a fiduciary duty.

26          Accordingly, the Court DISMISSES with leave to amend Plaintiff's sixth cause of action.

27

28

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

g.   **Financial elder abuse**

Plaintiff's first cause of action is against ORM and is based on the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst.Code, § 15600 et seq.).  As effective during the events that occurred throughout Robert's reverse mortgage application (late 2007 to February 2008),[1] § 15610.30 provided: "(a) 'Financial abuse' of an elder . . . occurs when a person or entity does any of the following: (1) Takes, secretes [sic], appropriates, or retains real or personal property of an elder . . . to [sic] a wrongful use or with intent to defraud, or both.  (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder . . . to [sic] a wrongful use or with intent to defraud, or both.  (b) A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes [sic], appropriates or retains possession of property in bad faith."  Financial elder abuse claims must be pleaded with particularity.  See Chavers v. GMAC Mortgage, LLC, 2012 WL 2343202, at *7 (C.D. Cal. June 20, 2012).

Determining whether particular conduct can be classified as "financial elder abuse" as that phrase is defined in the statute is not a straightforward prospect because the law has not been subjected to significant interpretation.  Those courts which have examined § 15610.30 have found potential abuse where a mortgage broker persuaded an elderly woman to refinance her home on terms inferior to those of her existing mortgage (Zimmer v. Nawabi, 566 F. Supp. 2d 1025 (E.D. Cal. 2008)), where an attorney and another individual colluded to persuade an elderly woman to make a significant monetary investment in a nightclub (Wood v. Jamison, 167 Cal. App. 4th 156 (2008)), and where the beneficiaries of a family trust received property from an elderly relative despite their knowledge that the property transfer was contrary to a trust amendment (Teselle v. McLoughlin, 173 Cal. App. 4th 156 (2009)).  O'Brien v. Cont'l Cas. Co., 2013 WL 4396761 (N.D. Cal. 2013)

In contrast, "financial elder abuse" was not found against a bank who issued a loan to an elderly man and transferred funds to foreign bank accounts pursuant to his instructions.  Das v.

_____

[1] On January 1, 2009 a new version of this section became effective.  See 77 West's Ann. Welf. & Inst.Code (2010 supp.) p. xxvi.  However, the parties in this case agree that the pre-2009 version of this section applies because the alleged misconduct occurred between 2007 and 2008.  See Pl's Opp. to ORM's Mot. to Dismiss at 11.

14

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

1   Bank of America, N.A., 186 Cal. App. 4th 727 (2010).  In that case, the court affirmed a judgment

2   of dismissal because Plaintiff's allegations failed to establish that the bank committed direct abuse

3   or assisted others in doing so.  Id. at 744.  As to direct abuse, the court found nothing in the

4   Complaint to demonstrate that the bank obtained property "for an improper use, or acted in bad

5   faith or with a fraudulent intent."  Id.  As to assisting others in abusive conduct, the court found

6   that § 15610.30 "cannot be understood to impose strict liability for assistance in an act of financial

7   abuse" and held that when "a bank provides ordinary services that effectuate financial abuse by a

8   third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third

9   party's wrongful conduct."  Id. at 744-45.

10          These cases are instructive on the issue presented here.  Plaintiff makes the following

11  allegations in support of her claim of financial elder abuse: 1) that ORM failed to present Robert

12  with adequate information regarding alternative reverse mortgage options with lower fees and to

13  advise against unduly and unnecesarily encumbering an asset, 2) that ORM did not consult with

14  Robert without Lynne being present, 3) that ORM directed Robert to transfer his separate property

15  into joint tenancy with Lynne, 4) that ORM knew or should have known that Robert was

16  susceptible to undue influence or fraud, 5) that ORM knew or should have known that ORM's

17  actions were aiding and abetting Lynne in committing financial elder abuse of Robert, and 6) that

18  ORM knew or should have known that Robert did not freely and of his own will enter into the

19  reverse mortgage.  FAC ¶¶ 45-50.

20          ORM's actions are distinguishable from the class of conduct examined in Zimmer, Wood,

21  and Teselle, each of which was characterized by some indicia of fraudulent or otherwise improper

22  activity underlying the wrongful receipt of property.  None of the facts alleged by Plaintiff suggest

23  fraudulent activity.  In that regard, this case more closely resembles Das—there is nothing in this

24  Complaint which supports some improper or fraudulent motive on the part of Defendant.  Although

25  Plaintiff alleges that ORM "knew or should have known" that Lynne was committing financial

26  elder abuse of Robert, this contention is merely an unsupported legal conclusion unentitled to an

27  assumption of truth.  See Twombly, 550 U.S. at 555.

28          Accordingly, the Court DISMISSES with leave to amend Plaintiff's first cause of action.

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### h.   Unfair Competition Law

Plaintiff's fourth cause of action alleges a violation of California's Unfair Competition Law ("UCL").  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation.  Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993) (internal citations omitted).  A complaint fails to state a plausible claim if it "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation."  Id.

Plaintiff bases her claim on an allegation "that Defendants violated the UCL, [sic] by, among other things, approving and earning monies from a reverse mortgage for an elderly person who was clearly and extremely susceptible to undue influence without adequately informing him of his options and by aiding in his financial abuse."  FAC ¶ 78.  As in Khoury, plaintiff here has failed to identify the particular section of the statutory scheme that was violated or to specify facts supporting the statutory violations.

Accordingly, the Court DISMISSES with leave to amend Plaintiff's fourth cause of action.

### i.   Agency allegations

Although Plaintiff's claims are dismissed on the grounds stated above, the Court additionally notes that Plaintiff has not adequately pleaded the existence of an agency relationship between Bank of America and ORM.  As Plaintiff concedes, her claims against Bank of America are entirely grounded on the theory that Bank of America is liable for the conduct of ORM as its agent.  Docket No. 41, Pl's Opp. to Bank of America's Mot. to Dismiss at 7.

"The traditional agency test requires a plaintiff to demonstrate: (1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking."  Sun Microsystems Inc. v. Hynix Semiconductor Inc., 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009).  California law similarly recognizes an agency relationship where a principal authorizes an agent to represent and bind the principal.  Cal. Civ. Code § 2295;  Champlaie v. BAC

16

1    Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1056 (E.D. Cal. 2009).  In California, "[t]he law

2    indulges no presumption that an agency exists but instead presumes that a person is acting for

3    himself and not as the agent for another."  Walsh v. Am. Trust, 7 Cal. App. 2d 654, 659 (1935).

4    Even where a plaintiff alleges that a lender offers a broker incentives to act in ways that further the

5    lender's interests, an agency relationship may not exist.  Arias v. Capital One, N.A., 2011 WL

6    835610, at *4 (N.D. Cal. Mar. 4, 2011).  The plaintiff must further allege that the lender gave

7    brokers authority to represent or bind the lender, or that the lender acted in such a way that would

8    give a third party the impression that an agency relationship existed.  Id.  The agency inquiry is

9    usually a question of fact for the jury; however, when only one inference can reasonably be drawn,

10   the existence of an agency relationship becomes a question of law for the court.  Stilson v.

11   Moulton–Niguel Water Dist., 21 Cal. App. 3d 928, 936 (1971).

12          Plaintiff has not pled sufficient facts to support her theory of agency between Bank of

13   America and ORM.  Plaintiff does not allege that Bank of America granted ORM authority to

14   represent or bind Bank of America, or even that the Bank of America acted in such a way as to

15   give Robert the impression that there existed an agency relationship between Bank of America and

16   ORM.  The FAC alleges that: 1) ORM sold "The Independence Plan" reverse mortgage solely for

17   Bank of America rather than as one of many similar products for various companies, 2) that ORM

18   was compensated directly by Bank of America and referred customers to Bank of America, 3) that

19   Bank of America utilized ORM to solicit applications for it, 4) that ORM handled processing of the

20   reverse mortgage for the Bank, 5) that ORM communicated Bank of America's demands to Robert,

21   and 6) that ORM did not present alternatives or attempt to negotiate in any way with what Bank of

22   America wanted.  See FAC ¶¶ 4, 5, 20, 26, 27.

23          On these facts, ORM merely solicited customers to apply for mortgages with Bank of

24   America and offered assistance with various aspects of the application process.  ORM had no

25   authority to bind or represent Bank of America as it appears that Bank of America retained control

26   over the approval of mortgage applications.  These facts fall short of alleging an agency

27   relationship between Bank of America and ORM.

28

17

United States District Court
For the Northern District of California

**V.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss.  All of Plaintiff's claims are DISMISSED with leave to amend.

Any amended complaint must be filed within thirty days of the date of this Order.  Plaintiff is advised that she may not add new claims or parties without first obtaining Defendants' consent or leave of court pursuant to Federal Rule of Civil Procedure 15.  Plaintiff is further advised that failure to amend the complaint in a manner consistent with this order may result in the dismissal of this action.

**IT IS SO ORDERED**

Dated: September 27, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:13-CV-01757-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS